UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES ROMERO,<br><br>                              Plaintiff,<br><br>v.<br><br>MONTEREY FINANCIAL SERVICES, LLC; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>                              Defendants. | Case No.:  19cv1781 JM (KSC)<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Defendant Monterey Financial Services, LLC ("Monterey") moves for summary judgment.[1]  (Doc. No. 44.)  Plaintiff also moves for summary judgment. (Doc. No. 56.) The motions have been briefed and the court finds them suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the below reasons, the motions are **GRANTED IN PART** and **DENIED N PART**.

---

[1] Defendant Equifax Financial Services, LLC ("Equifax") also moved for summary judgment. (Doc. No. 54.)  On December 4, 2020, however, Plaintiff filed notice that his claims against Equifax were resolved, and his only active claims are against Monterey. (Doc. No. 61.)

1

## I. BACKGROUND

The parties do not dispute the following facts. Monterey is in the business of purchasing and collecting debts. Monterey collected debts for a company called Emporium, which is not a party to this case. Two cell phones, a pair of headphones, and a portable phone charger were purchased online using some of Plaintiff's information. The goods were delivered to a Texas address. Plaintiff claims he never lived in Texas, does not know anyone that lives in Texas, and did not receive the items.

Emporium assigned the debt related to the phone purchase to Monterey for "servicing." As part of the assignment, Emporium provided Monterey with Plaintiff's name and social security number. Emporium gave the account a "fraud score." At the time of assignment, the debt was not past due and two payments had been made. When the debt was not paid, Monterey attempted to collect the debt. Monterey sent a letter and called Plaintiff. Plaintiff said the account was not his. Monterey began reporting the account on Plaintiff's credit report. As a result of the call, however, Monterey reported the account as disputed. Plaintiff disputed the account by submitting multiple consumer dispute verifications (CDVs) in which he claimed the account was fraudulent. Some of the CDVs contained a report of identity theft Plaintiff made to police.

Monterey investigated the dispute and considered the following: (1) the "import file" it received upon assignment contained Plaintiff's name, date of birth, and social security number; (2) Emporium had already conducted a "fraud check;" and (3) several payments were made on the account. Monterey continued to attempt to collect the debt and sent Plaintiff a letter including the underlying agreement as proof of the debt. Plaintiff subsequently called Monterey, and a representative suggested sending proof of where he lived at the time the agreement was executed. Plaintiff did not provide any further information to Monterey. Plaintiff left a voicemail for Monterey granting permission to speak with his attorney. When a collection supervisor spoke with Plaintiff's attorney, the supervisor said that Monterey would delete the account from Plaintiff's credit report, and did so that same day.

Plaintiff subsequently filed the instant action alleging violations of: (1) the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*; (2) the Rosenthal Fair Debt Collection Practices Act (RFDCPA), CAL. CIV. CODE § 1788, *et seq.*; (3) the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq.*; (4) the California Consumer Credit Reporting Agencies Act (CCCRAA), CAL. CIV. CODE § 1785.1, *et seq.*; (5) and the California Identity Theft Act (CITA), id. § 1798.92, *et seq*. In his opposition to Monterey's motion, however, Plaintiff voluntarily agreed to dismiss his FDCPA claim. (Doc. No. 49 at 16 n.3.)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard*, 677 F.2d 1301, 1306 (9th Cir. 1982). Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation and citation omitted). The court must examine the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court may not weigh evidence or make credibility determinations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment can only be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. Even in the absence of a factual dispute, a district court has the power to "deny summary judgment in a case where there is

reason to believe that the better course would be to proceed to a full trial." *Id.* at 255. The trial court's inquiry is not whether a reasonable trier of fact is likely to find in favor of the opposing party, but whether it could do so. *McIndoe v. Huntington Ingals*, 817 F.3d 1170, 1176 (9th Cir. 2016). Where cross motions for summary judgment are filed, the court must examine the entire record before ruling on either motion. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001).

## III. DISCUSSION

Both parties move for summary judgment on: (1) whether Monterey conducted a reasonable investigation of Plaintiff's dispute under the FCRA; (2) whether Monterey's investigation constituted a willful violation of the FCRA; (3) whether the debt at issue was a consumer debt under RFDCPA; (4) whether Monterey knew or should have known the information it reported to the credit reporting agencies was inaccurate under the CCCRAA; and (5) whether Monterey was a "claimant" under CITA. Monterey also argues Plaintiff's claim for emotional damages under both the FCRA and CCCRAA fails because it is not supported by competent evidence of genuine injury, and that Plaintiff's claim for actual damages in the form of emotional distress under RFDCPA fails because he is unable to establish the elements of a claim for intentional infliction of emotional distress (IIED).

Summary judgment adjudicates entire claims or legal issues, not questions of fact. In large measure, the parties ask this court to determine, as a matter of law, questions that are essentially factual, i.e., the reasonableness of an investigation by Monterey under all the circumstances, whether Monterey acted willfully, and whether Monterey had actual or constructive knowledge of the inaccuracy of reported information. These are questions best left to the trier of fact.

Notwithstanding the limitation of this court to adjudicate these factual issues as a matter of law, the court engages in the following analysis which may be of assistance to the parties in evaluating their respective positions.

///

///

### A. FCRA

#### 1. Reasonable Investigation

Under the FCRA, after receiving notice of Plaintiff's dispute, Monterey was required to "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency[; and] (C) report the results of the investigation to the consumer reporting agency[.]" 15 U.S.C. § 1681s-2(b)(1). The violation must be negligent or willful. *See* 15 U.S.C. §§ 1681n, 1681o. "To prove a negligent violation, a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (citation omitted).

Here, the parties genuinely dispute multiple facts that are material to the reasonableness of Monterey's investigation under the FCRA. For example, the parties dispute whether Monterey investigated: (1) whether Plaintiff lived in Texas or had family or friends in Texas, (Doc. No. 50-1 ¶ 68); (2) whether the telephone number listed in the underlying agreement belonged to Plaintiff, (*id.* ¶ 71); (3) whether the IP address that was used to electronically sign the agreement belonged to Plaintiff; and (4) whether the e-mail address contained in the "import file" belonged to Plaintiff, (*id.* ¶¶ 65-66). The parties also dispute whether the "fraud checks" conducted by Emporium verified whether the bank account belonged to Plaintiff, (*id.* ¶ 64), and whether the police report provided by Plaintiff included the results of an investigation, (Doc. No. 49-27 ¶ 21). Although Monterey admits that it "believed it was probable that the [a]ccount was opened fraudulently," it nonetheless disputes Plaintiff was a "victim of identity theft." (Doc. No. 50-1 ¶ 100.)

Additionally, a reasonable trier of fact could find Monterey's investigation was not objectively reasonable. For example, it is undisputed that Plaintiff told Monterey he did not make the purchase, and Monterey eventually "deleted" the account. (*Id.* ¶¶ 82-83, 90.) It is also undisputed that Plaintiff reported the incident to the police, provided Monterey with a copy of the police report, and the detective who took the report called Monterey, but Monterey did not call him back. (*Id.* ¶¶ 82-83, 93-95.) It is also undisputed the goods

purchased online were shipped to a Texas address, and Monterey apparently does not dispute that Plaintiff never lived in Texas and never received the goods.[2] (Doc. No. 50-1 ¶ 48.) Furthermore, it is undisputed that Monterey did not investigate or trace the IP address that was used to electronically sign the agreement, (*id.* ¶ 67), or investigate the involvement of a person identified by Plaintiff as the possible identity thief, (*id.* ¶ 74).

A reasonable finder of fact could also find, however, that Monterey's investigation was objectively reasonable. For example, it is undisputed that Monterey conducted "skip-tracing," (*id.* ¶ 75-76), reviewed all the documents in its possession, spoke with Plaintiff, and suggested some additional documents Plaintiff could provide, but Plaintiff never provided any further information, (Doc. No. 49-27 ¶¶ 31-32). It is also undisputed that Monterey "considered" the fact that (1) the "import file" contained Plaintiff's name, date of birth, and social security number; (2) the product was delivered; (3) Emporium conducted some form of a fraud check as part of its own underwriting; and (4) some payments were made on the account. (*Id.* ¶ 25.)[3]

Monterey primarily argues that under *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009), it was only required to review its own files. (Doc. No. 50 at 2.) However, this was not *Gorman's* holding. Rather, the court stated the reasonableness of an investigation under 15 U.S.C. § 1681s-2(b) is "generally a question for a finder of fact." *Id.* The court nonetheless granted summary judgment for defendant because it "did

---

[2] Monterey objects to the statement that Plaintiff never lived in Texas "to the extent that this statement suggests that [Monterey] knew, or was able to ascertain, this fact prior to the completion of the extensive discovery that occurred in this litigation," but "following the completion of discovery this fact is undisputed." (Doc. No. 50-1 ¶ 48.)

[3] The parties also make boilerplate evidentiary objections to nearly every material fact put forth by the other, disputed or otherwise. Because the court's decision does not hinge on the admissibility on any one particular fact or set of facts, at this stage in the litigation, the parties' numerous evidentiary objections are OVERRULED AS MOOT. The parties will, of course, have the opportunity to make motions in limine prior to trial and to make evidentiary objections at trial.

review all the pertinent records in its possession, which revealed that an initial investigation had taken place," and because the defendant had "gone outside its own records to investigate the allegations." *Id.* Here, it is not reasonable to infer the "fraud score" performed by Emporium constituted an "investigation" to the degree the court found sufficient in *Gorman*. With the exception of asking Plaintiff for more documents, it is also not clear that Monterey's investigation went much beyond reviewing the records in its "possession." For example, as discussed above, Monterey admittedly did not call back the detective that took Plaintiff's report of identity theft. Finally, it is not clear the parties in *Gorman* disputed as many material facts as the parties do here, or that the facts surrounding the investigation in *Gorman* are reasonably comparable to the facts in this case. Indeed, the reasonableness of any investigation involving identity theft is likely to be a highly individualized and fact-intensive inquiry. Accordingly, *Gorman* does not require a finding as a matter of law that Monterey's investigation was reasonable.[4]

Monterey also argues Plaintiff has not met his burden because the only evidence Plaintiff provided in support of his claim of identity theft was the police report that contained nothing but a victim's statement, and Plaintiff failed to provide bank statements and utility bills that Monterey requested to corroborate Plaintiff's fraud claims. (Doc. No. 44-1 at 26.) As noted above, however, Plaintiff points to multiple facts outside of the police report suggesting that Monterey's investigation was not reasonable. Certainly, Monterey's

---

[4] In its reply, Monterey contends it considered documents "outside its file," including Emporium's records, the underlying agreement, and police reports. (Doc. No. 50 at 2.) In addition to being raised for the first time in its reply, it is not apparent that any of these documents were actually "outside its file," or that reviewing these records, in addition to the records "in" the file, warrants a finding that Monterey's investigation was reasonable as a matter of law. As noted above, while the court in *Gorman* credited the defendant for going "outside its own records" to investigate the allegations, the investigation went beyond reviewing the records in the defendant's "possession." 584 F.3d at 1161. Here, there is nothing to suggest the records Monterey reviewed were not already in its possession, or that Monterey proactively sought to obtain them.

apparent request for additional information, and Plaintiff's undisputed failure to do so, weighs in favor of the reasonableness of the investigation.[5] These facts are not so weighty, however, to require a finding that Monterey's investigation was reasonable as a matter of law, and Monterey cites no authority suggesting otherwise.

Accordingly, the parties' cross motions for summary judgment on the reasonableness of Monterey's investigation under the FCRA are **DENIED**. However, Plaintiff moves for summary judgment as to the remaining prima facia elements of his FCRA claim under 15 U.S.C. § 1681s-2(b), including: (1) Monterey is a "furnisher;" (2) Plaintiff disputed the credit reporting as inaccurate; (3) the credit reporting agency notified the furnisher of the alleged inaccurate information; and (4) the reporting was inaccurate. (Doc. No. 56 at 8-11.) Because these "elements" are undisputed, and Monterey does not oppose Plaintiff's motion as to these "issues," Plaintiff's motion for summary judgment as to these remaining "elements" of his FCRA claim under 15 U.S.C. § 1681s-2(b) is **GRANTED**.

### 2.  Willful Violation

As noted above, to succeed at trial, Plaintiff must show Monterey's violation of the FCRA was either negligent or willful. *See* 15 U.S.C. §§ 1681n, 1681o. Statutory and punitive damages are available for willful violations. 15 U.S.C. § 1681n(a). Willfulness may be shown by a reckless disregard of a statutory duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino*, 978 F.3d at 673 (9th Cir. 2020) (citing *Safeco*,

---

[5] Monterey also makes the cursory argument that the "IP address issue" and Plaintiff's identification of the possible identity thief does not show fraud. (Doc. No. 50 at 3.) The issue is not whether Plaintiff showed fraud, however, but whether Monterey's investigation was reasonable.

551 U.S. at 57). "That is, the defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1101 (N.D. Cal. 2016) (quoting *Safeco*, 551 U.S. at 68).

As discussed above, there is a genuine dispute as to whether Monterey's interpretation of its investigatory obligation under 15 U.S.C. § 1681s-2(b)(1) was objectively unreasonable. Therefore, it cannot be said, as a matter of law, that Monterey's investigation was not only objectively unreasonable, but that Monterey ran the risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless. Accordingly, Plaintiff's motion for summary judgment that Monterey willfully violated the FCRA is **DENIED**.

With respect to Monterey's motion, it is a closer question whether a reasonable trier of fact could find Monterey's investigation was both careless and demonstrated a reckless disregard for its statutory duty. However, Plaintiff points to no evidence in the record showing willfulness as opposed to mere carelessness. Instead, Plaintiff argues that Monterey admits that its investigation consisted solely of "data confirmation," which several non-controlling cases have found "reprehensible" and worthy of punitive damages because it is a "hands off" method of investigation. (Doc. No. 49 at 25-26.) The facts of those cases, like the facts in this case and those in *Gorman*, are unique and distinguishable. For example, in *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1263 (N.D. Ala. 2011), the investigations were conducted almost entirely by computer. In *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1299 (11th Cir. 2019), the investigation consisted of a review of an outdated internal database. Although Monterey may have willfully chosen not to pursue particular lines of investigation, e.g., declining to return a call from the detective who took Plaintiff's police report, this does not show, as a matter of law, that Monterey willfully disregarded its statutory duties to conduct a reasonable investigation. Accordingly, Monterey's motion for summary judgment that it did not willfully violate the FCRA is **GRANTED**.

### 3. Genuine Injury

Monterey argues Plaintiff's claim for emotional damages under both the FCRA and CCCRAA fails because it must be supported by "competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" (Doc. No. 44-1 at 29 (quoting *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013)).) Monterey argues that Plaintiff's testimony that he was "very nervous" is conclusory and should be disregarded.[6] (*Id.*) Plaintiff's testimony was not, however, limited solely to claiming he was "very nervous." Plaintiff testified that from December 2017 to January 2019, i.e., the period when the debt appeared on his credit report, he "got very nervous, to the point where [he] couldn't stop thinking about it, to the point where [he] couldn't sleep sometimes," and that he was afraid that if his employer, the U.S. Navy, found out, he would be in trouble and could lose his security clearance. (Doc. No. 49-27 at 20 ¶ 43.) Plaintiff also testified that he felt offended by Monterey's refusal to consider the police report he filed, stating, "I'm not about to lie to the police about what happened to me." (Doc. No. 49-26 at 53.)

Monterey further argues Plaintiff's wife contradicted Plaintiff's testimony because she testified that Plaintiff's "symptoms" began in 2015 when his mother was diagnosed with cancer, not 2017 when Plaintiff first spoke with Monterey. (Doc. No. 44-1 at 29-30.) Plaintiff's wife's testimony is not, however, as contradictory as Monterey claims. Rather, Plaintiff's wife testified: (1) Plaintiff was "emotionally . . . . very distraught . . . . [w]hen he first learned . . . . that somebody used his credit card without him knowing," (Doc. No. 44-6 at 18); (2) when Plaintiff is distraught "[h]e gets very nervous, and when he does, he will drink sometimes more than he intends to [and] he will smoke more than he intends to," (*id.* at 19); (3) Plaintiff is a "worrywart" and in 2015 Plaintiff's "mom got cancer and that has – ever since then, you know, it's changed more so . . . ." and Plaintiff would "get

---

[6] Plaintiff does not concurrently move for summary judgment as to this or any damages issue. *See* Doc. No. 56-1 at 7 ("Romero now brings this Motion with regard to the issue of [Monterey's] liability while reserving the issue of damages for trial.").

more emotional," (*id.* at 19-20); and (4) Plaintiff took sleeping medication "maybe 30 times a year," but she didn't know the exact timeframe when he took the medication except that he stopped "maybe" in December 2019, (*id.* at 21-22). At most, Plaintiff's wife's testimony casts doubt on Plaintiff's credibility as to when his emotional distress first began, which is not appropriate for resolution on summary judgment.

Finally, Monterey cites several non-controlling circuit court decisions in which the court awarded summary judgment to the defendant based on the plaintiff's vague, conclusory, and uncorroborated deposition testimony regarding emotional damages. (Doc. No. 44-1 at 30.) Here, however, Plaintiff's testimony is corroborated, at least to some degree, by his wife's testimony, and Plaintiff's testimony includes detail that was apparently lacking in the cases cited by Monterey. *See Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (uncorroborated testimony that plaintiff was a "complete wreck" is insufficient under circuit precedent); *Taylor*, 710 F.3d at 829 (plaintiff failed to offer any reasonable detail about the nature and extent of her alleged emotional distress, and could only corroborate a brief crying episode); *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (merely alleging that defendant's actions were "inherently degrading or humiliating" was insufficient under the circuit's high threshold for proof of damages for emotional distress). Monterey cites no authority suggesting a strict standard for emotional damages exists or should be applied in the Ninth Circuit, or that Plaintiff's testimony fails to meet such a standard.[7] Accordingly, Monterey's motion for summary judgment as to Plaintiff's emotional damages under the FCRA and CCCRAA is **DENIED**.

---

[7] Monterey also points out that Plaintiff did not seek medical treatment or incur economic damages. (Doc. No. 44-1 at 29.) Monterey cites no authority, however, supporting its implied argument that medical treatment or economic damages are required to show emotional damages. These facts go more to the credibility of Plaintiff's testimony.

### B. RFDCPA

The RFDCPA "mimics or incorporates by reference the FDCPA's requirements." *Riggs v. Prober & Raphel*, 681 F.3d 1097, 1100 (9th Cir. 2012). To establish a violation of the RFDCPA, a plaintiff must show: (1) the defendant was attempting to collect a "consumer debt;" (2) the defendant was a "debt collector;" (3) the plaintiff was a "debtor;" and (4) the defendant's collection activities violated the FDCPA and thus the RFDCPA. *See* CAL. CIV. CODE § 1788.17; *see also Barvie v. Bank of Am., N.A.*, No. 18-CV-449-JLS (BGS), 2018 WL 4537723, at *3 (S.D. Cal. Sept. 21, 2018).

### 1. Consumer Debt

The RFDCPA defines "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." CAL. CIV. CODE § 1788.2(f). "Consumer credit transaction" is defined as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." *Id.* § 1788.2(e). Monterey argues Plaintiff's RFDCPA claim fails because "Plaintiff is unable to establish that the 'debt' at issue is consumer debt entered into for personal, family, or household reasons" because, when Monterey first called him, he denied knowing anything about the account or the creditor. (Doc. Nos. 44-1 at 9, 18-19; 49-27 at ¶ 16.) Plaintiff argues the debt is a "consumer debt" because: (1) the underlying agreement refers to the signatory as a "customer" and "consumer," (2) the items purchased, i.e., two cell phones and some accessories, are consumer in nature; (3) Monterey's communications contain legally required consumer debt collection disclosures; (4) Monterey reported the debt on Plaintiff's consumer credit report, not a business credit report; and (5) the policies Monterey provided in discovery refer to the collection of consumer debts for retail products. (Doc. No. 49 at 20.)

Here, Monterey does not genuinely dispute any of these facts upon which Plaintiff relies to show the debt was a consumer debt, and Monterey does not argue these facts are

immaterial.[8]  Monterey also cites no controlling authority suggesting Plaintiff's initial ignorance concerning the alleged theft of his identity requires finding, as a matter of law, that the purchase of two cell phones in his name was not a consumer debt under the RFDCPA.  In *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1306 (S.D. Fla. 2016), the main case upon which Monterey relies, the court found that "a victim of identity theft or mistaken identity need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with some evidence showing that the debt is consumer in nature."  To the extent this standard should be applied here, as discussed above, Plaintiff has shown evidence of the identity theft along with some evidence the debt is consumer in nature.  *See also Toroussian v. Asset Acceptance, LLC*, No. CV 12-03519 DDP (AGRx), 2013 WL 5524831, at *6 (C.D. Cal. Oct. 4, 2013) (plaintiff failed to show a "debt" under the FDCPA because she did not even attempt to identify the fraudulent charges made in her name).

With respect to Plaintiff's motion for summary judgment on the consumer debt issue, the evidence of identity theft and a consumer debt does not necessarily prove, as a matter of law, the debt related to the purchase of two cell phones was for personal, family, or household purposes.  Because there is no undisputed evidence as to who purchased the cell phones and for what reason, a reasonable trier of fact could find Plaintiff has not met his burden as to this element of his RFDCPA claim.  Also, in his own motion for summary

---

[8] Instead, Monterey repeatedly argues Plaintiff's declaration should be disregarded under Civil Local Rule 5.4(f) because he did not hand-sign it in violation of Section 2(f) of the CM/ECF Administrative Policies and Procedures Manual. (Doc. No. 50 at 9 n.1.) Section 2(f) does not specifically state that non-registered users must "hand-sign" documents, only that "the filing party must scan and electronically file the original document." Regardless, Local Rule 5.4(f) is discretionary.  Civ. L.R. 5.4(f) ("The Court may direct the Clerk to strike from the record any document which fails to comply with the requirements for electronic filing set forth in the Administrative Policies and Procedures Manual.")  Given the COVID-19 pandemic and Plaintiff's service in the U.S. Navy, the court declines Monterey's request to disregard the declaration for lack of a hand-signature.

judgment on the issue of consumer debt, Plaintiff merely incorporates by reference its opposition to Monterey's motion. (Doc. No. 56-1 at 18.) Accordingly, the parties' cross motions for summary judgment on whether the debt at issue is a "consumer debt" under the RFDCPA are **DENIED**.

Plaintiff also moves for summary judgment on the remaining elements of his RFDCPA claim, including that Monterey is a "debt collector," Plaintiff is a "debtor," and Monterey violated the FDCPA. (Doc. No. 56-1 at 17-22.) Although Monterey does not dispute these elements in its opposition to Plaintiff's motion for summary judgment, it did so in its own motion for summary judgment. (*See* Doc. No. 44-1 at 16-19.) As noted above, Plaintiff dropped his FDCPA claim in his opposition to Monterey's motion, (*see* Doc. No. 49 at 16 n.3), and the RFDCPA borrows from the FDCPA. Accordingly, and because the issue of whether Monterey violated the FDCPA is more an ultimate issue than an "element" of Plaintiff's RFDCPA claim, the court defers any decision as to these remaining "elements" of Plaintiff's RFDCPA claim except as discussed above. Accordingly, Plaintiff's motion for summary judgment as to these remaining elements of his RFDCPA claim is **DENIED**.

### 2. Actual Damages

As noted above, Monterey argues Plaintiff's claim for actual damages in the form of emotional distress under RFDCPA fails because he is unable to establish the elements of IIED.[9] (Doc. No. 44-1 at 20.) In support of this argument, Monterey cites *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007), in which the court found that plaintiffs are required to establish the elements of IIED in order to sustain a claim for

---

[9] Plaintiff does not dispute that actual damages are a required element of his RFDCPA claim, and Plaintiff does not move for summary judgment on the actual damages issue raised by Monterey. (*See* Doc. No. 56-1 at 7.)

emotional distress damages under RFDCPA.[10] As recognized in *Costa*, however, the Ninth Circuit has not decided the issue and district courts are split. *See id.* As Plaintiff argues, and Monterey does not dispute, the majority of district courts have found that plaintiffs are not required to show the elements of IIED, including extreme and outrageous conduct. *See, e.g.*, *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1199 (E.D. Cal. 2013). Instead, Monterey again argues Plaintiff's testimony regarding his emotional damages conflicts with his wife's testimony, and that Plaintiff's word is insufficient to support emotional damages. (Doc. No. 50 at 7.) As discussed above, however, Plaintiff's testimony is at least somewhat corroborated by his wife's testimony, and credibility issues are more appropriately resolved at trial.

Monterey also cites *Alford v. JP Morgan Chase Bank, N.A.*, Case No. 16-cv-04723-HSG, 2017 WL 6611652, at *5 (N.D. Cal. Dec. 27, 2017), in which the court found plaintiff's claims of lost sleep and fear of foreclosure in support of his RFDCPA claims were insufficient to survive summary judgment. Here, however, Plaintiff provides different and more detailed testimony regarding his emotional distress, including that he was concerned about losing his security clearance and being punished by his employer, the U.S. Navy. (Doc. No. 44-1 at 22-23.) He also purportedly seeks to introduce testimony from his wife regarding the manifestation of his distress in unhealthy habits. (Doc. No 49 at 30.) As weak as Plaintiff's claim for emotional damages may be, the degree of Plaintiff's emotional distress is an issue of material fact that is genuinely disputed. Accordingly, Monterey's motion for summary judgment on actual damages under RFDCPA is **DENIED**.

### C. CCCRAA

Under the CCCRAA, "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or

---

[10] Monterey concedes that emotional damages under the FCRA and CCCRAA do not require Plaintiff to establish the elements of a claim for IIED. (Doc. No. 44-1 at 29).

should know the information is incomplete or inaccurate." CAL. CIV. CODE § 1785.25(a). Monterey argues Plaintiff's unsupported claims of fraud he made to Monterey do not unilaterally establish that Monterey knew or should have known the information was inaccurate. (Doc. No. 63 at 19-20.) Monterey also argues the police report provided by Plaintiff did not include the results of an investigation, and was insufficient to overcome conflicting information, including that: (1) the underlying agreement included Plaintiff's name; (2) multiple payments were made on the debt; (3) Plaintiff's social security number was utilized to open the account; and (4) Plaintiff refused to substantiate his claims with proof of residency. (*Id.* at 20.) In opposition, Plaintiff argues the application of his name and social security number is precisely the inaccuracy he reported to Monterey, and cannot serve to support accuracy. (Doc. No. 66 at 12.) Plaintiff also repeats his arguments that Monterey should have initially looked into whether Plaintiff was associated with the bank account that made some payments on the debt, and should have initially utilized skip tracing to confirm he never lived in Texas. (*Id.*)

As discussed above, both parties rely on different material facts, some of which are disputed, that could lead a reasonable trier of fact to conclude Monterey knew or should have known the information was inaccurate. Monterey also does not specifically dispute in its motion it should have known the debt was not Plaintiff's, only that it did not actually know.[11] Accordingly, the parties' cross motions for summary judgment as to whether Monterey knew or should have known under the CCCRAA the information it reported was inaccurate are **DENIED**. However, Plaintiff also moves for summary judgment on other elements of Plaintiff's CCCRAA claim, including that: (1) Monterey is a "person" under the CCCRAA; (2) Monterey reported the information to a credit reporting agency; and (3) the information reported was inaccurate. (Doc. No. 56-1 at 12-14.) Monterey does not

---

[11] In its reply, Monterey states there is no reason it should have known the debt was not Plaintiff's, but provides no evidence supporting this claim. Instead, Monterey focuses solely on arguing that it did not actually know. (*See* Doc. No. 50 at 5-6.)

oppose Plaintiff's motion on these grounds. Accordingly, and based on the authorities cited in Plaintiff's papers, Plaintiff's motion for summary judgment as to these other elements of his CCCRAA claim is **GRANTED**.

### D. CITA

Under CITA, a "victim of identity theft" may bring an action for damages, civil penalties, and injunctive relief against a "claimant." CAL. CIV. CODE § 1798.93(a)-(c). A "claimant" is defined as "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." *Id.* § 1798.92(a). Monterey argues it is not a "claimant" under CITA because when the suit was filed it no longer had an interest in the debt. (Doc. No. 44-1 at 23.)

In *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1093 (9th Cir. 2008), the Ninth Circuit held that a "claimant" does not "include a person who had an interest in a disputed debt at some point in the past, but who no longer retains the interest at the time suit is filed." Additionally, in *Soria v. U.S. Bank N.A.*, Case No. CV 17-00603 CJC (KESx), 2019 WL 8167925, at *9 (C.D. Cal. Apr. 25, 2019), the district court granted summary judgment for the defendant bank because the bank "closed" the disputed loans, and it was undisputed the bank did not assert a claim against the plaintiff related to the loans. In *Martirosian v. JP Morgan Chase Bank, N.A.*, Case No. CV 13-2987 RGK (RZx), 2014 WL 12567792, at *3 (C.D. Cal. Apr. 11, 2014), however, the district court distinguished *Satey* because "[t]here, the bank had sold all its rights in the debt to a debt collector, leaving the bank with no 'present interest' in the debt." The court stated, "[f]ailing to pursue a debt is not equivalent to selling a debt to a third party." *Id.*

Here, Monterey does not argue the debt has been paid or transferred to a third party, and Monterey does not otherwise explicitly state it is legally prohibited from reinitiating debt collection efforts against Plaintiff. Also, Monterey has not, as Plaintiff insists, "accepted" or "honored" his claim that the account was fraudulent. Instead, Monterey states it "closed the [a]ccount merely as a business decision." (Doc. No. 49-27 ¶ 38.) In its papers, however, Monterey states that after closing the account, it (1) "no longer claimed

any interest in the account," (Doc. No. 44-1 at 33); (2) sent Plaintiff a letter stating, "[y]our account with Monterey Collections has been closed, and you have no further obligation to Monterey Collections and/or Emporium," (Doc. No. 50 at 10); and (3) "[i]n doing so, it permanently divested itself of its interest in the [a]ccount" and "terminated collection activity in perpetuity," (Doc. No. 63 at 30). Based on this apparent waiver of its interest in collecting the debt from Plaintiff, it is not clear how Monterey could honestly and legitimately reinitiate debt collection efforts against Plaintiff in the future. Although Monterey has not "accepted" or "honored" Plaintiff's fraud claim, based on the above, Monterey did not, as a matter of law, possess an interest in reinitiating debt collection efforts against Plaintiff when the lawsuit was filed. Accordingly, Monterey's motion for summary judgment on Plaintiff's CITA claim is **GRANTED**. For the same reason, Plaintiff's motion for summary judgment as to his CITA claim is **DENIED**.

## IV.  CONCLUSION

For the forgoing reasons, the parties' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**. The parties' cross motions on the reasonableness of Monterey's investigation under the FCRA are **DENIED**. Plaintiff's motion on the remaining prima facia elements of Plaintiff's claim under the FCRA, 15 U.S.C. § 1681s-2(b), is **GRANTED**. Plaintiff's motion as to Monterey's willfulness under the FCRA is **DENIED**. Monterey's motion as to its willfulness under the FCRA is **GRANTED**. Monterey's motion as to Plaintiff's emotional damages under the FCRA and CCCRAA is **DENIED**.

The parties' cross motions on whether the debt at issue is a "consumer debt" under the RFDCPA are **DENIED**. Plaintiff's motion as to the other elements of his RFDCPA claim is **DENIED**. Monterey's motion as to Plaintiff's claim for actual damages under the RFDCPA claim is **DENIED**.

The parties' cross motions on whether Monterey knew or should have known under CCCRAA that the information it reported was inaccurate are **DENIED**. Plaintiff's motion as to the other elements of his CCCRAA claim is **GRANTED**. Monterey's motion as to

Plaintiff's CITA claim is **GRANTED**. Plaintiff's motion as to his CITA claim is **DENIED**.

Finally, as noted above, Plaintiff initially brought a claim under the FDCPA, but voluntarily agreed to dismiss this claim. (*See* Doc. No. 49 at 16 n.3.) Accordingly, Plaintiff's FDCPA claim is **DISMISSED**.

IT IS SO ORDERED.

DATED: January 27, 2021

JEFFREY T. MILLER
United States District Judge